Gregory JEZARIAN, Geraldine Jezarian, and Lonetown Company, Plaintiffs,

v.

Frank CSAPO, E. A. Bartz, John W. Castellucci, Richard Karkow, Theodore Kheel, Paul M. Kuveke, Jr., C. W. Marshall, Edwin J. Schulz, Harper Sibley, Jr., David Stirling, Jr., William G. Stirling, Estate of David Stirling, Sr., Carl L. Wren, Harold M. Yanowitch, Peat, Marwick, Mitchell & Co., Merrill Lynch, Pierce, Fenner & Smith, Inc., Chemical Bank, and Harris, Kerr, Forster & Co., Defendants.

No. 72 Civ. 1671.
MDL–126.

United States District Court,
S. D. New York.

Oct. 29, 1979.

Pomerantz Levy Haudek & Block, New York City, for plaintiffs, by Robert B. Block, New York City.

Brown, Wood, Ivey, Mitchell & Petty, New York City, for defendant Merrill Lynch, Pierce, Fenner & Smith, Inc.; E. Michael Bradley, A. Robert Pietrzak, New York City, of counsel.

Cahill, Gordon & Reindel, New York City, for defendant Peat, Marwick, Mitchell & Co.; Ralph C. Menapace, Jr., New York City, of counsel.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendant Harris, Kerr, Forster & Co.; James E. Tolan, Bruce E. Pindyck, New York City, of counsel.

## OPINION

BONSAL, District Judge.

After more than seven years of litigation in these consolidated actions, a Stipulation of Settlement dated May 23, 1979 between the class plaintiffs and three of the defendants, Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), Peat, Marwick, Mitchell & Co. ("Peat, Marwick"), and Harris, Kerr, Forster & Co. ("Harris, Kerr") and a Plan for Distribution prepared by plaintiffs' attorneys pursuant to the Stipulation of Settlement have been submitted to this Court for approval. These actions were consolidated by orders of the Judicial Panel on Multidistrict Litigation under the caption *In re Stirling Homex Securities Lit-*

*igation* (MDL–126).[1]  The Stipulation of Settlement would settle all claims asserted by the class plaintiffs against Merrill Lynch; Peat, Marwick; and Harris, Kerr ("the settling defendants").

Stirling Homex Corporation ("Stirling Homex") was organized in 1968 and was engaged in the manufacture and installation of modular or factory-built houses.  On February 19, 1970, it made a public offering consisting of 1,175,000 shares of common stock.  On July 29, 1971, it made a second public offering consisting of 500,000 shares of $2.40 cumulative convertible preferred stock ("preferred stock").  On July 10, 1972, Stirling Homex filed a petition in bankruptcy.  On March 11, 1977, certain of its directors and officers were convicted of securities and mail fraud in connection with the sale of stock of Stirling Homex.

The Consolidated Amended and Supplemental Complaint filed on June 2, 1976 ("Amended Complaint") contains three claims hereinafter discussed that would be affected by the proposed partial settlement.  These claims are asserted on behalf of the class certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.  This class consists of purchasers of Stirling Homex common stock from March 16, 1971 through July 10, 1972 and purchasers of Stirling Homex preferred stock from July 29, 1971 through July 10, 1972.

The first claim in the Amended Complaint alleges that the settling defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5, 17 C.F.R. § 240.10b–5, by materially overstating the income and net worth of Stirling Homex in financial statements and other publications during the class period, causing the price of Stirling Homex stock to be artificially inflated.

Merrill Lynch is alleged to have been the investment banker for Stirling Homex and to have distributed the preliminary prospectus and the prospectus for the public offering of July 29, 1971, both of which allegedly contained false statements.  During most of the class period, Merrill Lynch was the principal market maker for Stirling Homex securities.  Following distribution of the preferred stock in 1971, Merrill Lynch is alleged to have prepared and made available to its salesmen a series of research reports which contained materially false and misleading information and recommendations about Stirling Homex stock.  In addition, Merrill Lynch is alleged to have distributed a false and misleading article on Stirling Homex.

Peat, Marwick became the auditors for Stirling Homex, replacing Harris, Kerr, on February 24, 1971.  Peat, Marwick is alleged to have certified false financial statements which were contained in the prospectus for the public offering of July 29, 1971 and in the Company's financial report for its fiscal year 1971.  Also, Peat, Marwick is alleged to have reviewed accounting methods and interim financial statements of Stirling Homex up to the time of its bankruptcy.

Harris, Kerr were auditors of Stirling Homex from prior to October 7, 1970 to February 24, 1971, and were alleged to have certified false financial statements for the fiscal year ended July 31, 1970.  These statements were included in a preliminary prospectus dated April 21, 1971 and in the registration statement and prospectus for the public offering of July 29, 1971.

The second claim alleges that Merrill Lynch violated Section 10(b) and Rule 10b–5 by conspiring with Chemical Bank and a director of Stirling Homex to falsely represent in a footnote to the registration statement and prospectus for the public offering of July 29, 1971 that U.S. Shelter Corporation, a subsidiary of Stirling Homex, had obtained a $15,000,000 line of

---

1.  The main action, *Jezarian, et al. v. Csapo, et al.*, 72 Civ. 1671, was commenced in this Court on April 24, 1972.  By order filed December 21, 1973, the Judicial Panel on Multidistrict Litigation transferred eight related actions pending in districts other than the Southern District of New York to this Court for "coordinated or consolidated pretrial proceedings, pursuant to 28 U.S.C. § 1407."  By subsequent orders, the Judicial Panel on Multidistrict Litigation transferred twenty additional tag-along cases to this Court.

unsecured credit. Merrill Lynch is alleged to have asked U.S. Shelter Corporation to obtain a letter from a bank indicating that U.S. Shelter Corporation had banking support and proper financing. Chemical Bank is alleged to have accommodated this request by furnishing a letter suggesting the existence of an unsecured line of credit, although the bank never established, nor intended to establish, such a credit.

The third claim alleges that Merrill Lynch, Peat, Marwick and three individual defendants violated Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, by materially overstating the income and net worth of Stirling Homex in the registration statement for the public offering of July 29, 1971. This claim is brought on behalf of class members who purchased Stirling Homex preferred stock.

## THE PROPOSED PARTIAL SETTLEMENT

To compromise, settle and dismiss all claims asserted against them, the settling defendants have paid $10,525,000, which was deposited in escrow on April 11, 1979 and is earning interest in excess of ten percent, the interest to be added to the fund. No part of the settlement fund will revert to the settling defendants.

The settlement fund will be charged with certain expenses incurred by plaintiffs' attorneys and with fees and disbursements of plaintiffs' attorneys and accountant to the extent approved by this Court.

If the proposed partial settlement is approved, the settling defendants will be released from all claims arising from any matter set forth in the complaint asserted by plaintiffs and other settling defendants and plaintiffs agree to indemnify the settling defendants against indemnity or contribution claims asserted by any non-settling defendant.

**2.** Prior to March 20, 1972, the price of the preferred stock exceeded the offering price, reaching $57.00 per share.

**3.** Recovery is limited to reflect the considerations discussed in *Bonime v. Doyle*, 416 F.Supp.

## THE PLAN FOR DISTRIBUTION

Pursuant to the Stipulation of Settlement, plaintiffs' attorneys have prepared a Plan for Distribution of the settlement fund to the following categories of claimants.

*Category A*—This category consists of claims of preferred stockholders, and holders of common stock acquired through conversion of preferred stock, who held their stock at the time of bankruptcy. These stockholders may file claims under Section 11 of the 1933 Act or Section 10(b) of the 1934 Act. Claims filed pursuant to Section 11 cannot exceed the issue price of the preferred stock, which was $40 per share, less resale proceeds, if any. 15 U.S.C. § 77k. If stockholders in this category elect to file their claims pursuant to Section 10(b), the $40 limitation does not apply.[2] However, recovery for claims pursuant to Section 10(b) is limited to 80% of the price paid, less resale proceeds, if any, because of the issue of scienter. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

*Category B*—This category consists of claims of common stockholders who continued to hold their stock at the time of bankruptcy. These stockholders have claims only under Section 10(b) and therefore would face the issue of scienter. *See Hochfelder, supra.* Accordingly, these claims are limited to 80% of the price paid, less resale proceeds, if any.

*Category C*—This category consists of claims of preferred stockholders, and common stockholders who acquired their stock through conversion of preferred stock, who sold their stock prior to bankruptcy. The Plan limits recovery to the greater of 50% of the price paid up to $40 per share, less resale proceeds, or 40% of the price paid, less resale proceeds.[3]

*Category D*—This category consists of claims of common stockholders who sold

1372, 1384–86 (S.D.N.Y.1976); *Tucker v. Arthur Andersen & Co.*, 67 F.R.D. 468, 481–82 (S.D.N.Y.1975); *Gold v. DCL Incorporated*, 399 F.Supp. 1123, 1130 (S.D.N.Y.1973).

their stock prior to bankruptcy. The Plan limits recovery to 40% of the price paid, less resale proceeds.[4]

## THE HEARING

By order dated June 11, 1979, this Court: directed that a hearing be held on September 20, 1979 to consider the Stipulation of Settlement and the Plan for Distribution; directed that notice be sent to the class members pursuant to Rule 23(e) of the Federal Rules of Civil Procedure; directed that each notice be accompanied by a form of proof of claim; and fixed a bar date of November 2, 1979 for the filing of claims by class members.

At the hearing on September 20, 1979, only two objections were asserted:

Rita Strauss objected on behalf of herself and her husband to the exclusion of stockholders who purchased their stock prior to the commencement of the class period.

Richard L. Rosen, a former employee of Stirling Homex, objected by letter from his attorney to the exclusion of former employees from participation in the settlement. Mr. Rosen, who obtained his stock under a stock option plan, was advised to file a proof of claim giving particulars.

## DISCUSSION

To approve this proposed partial settlement, the Court must find, on behalf of absent class members, that it is fair, reasonable, and adequate. See Fed.R.Civ.P. 23(e); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974); *Beecher v. Able*, 72 F.R.D. 518 (S.D.N.Y.1976). In making this determination, the Court must consider "the likelihood of establishing liability and the consequent probable reward in damages, balanced against the amount offered in settlement." *Bonime v. Doyle*, 416 F.Supp. 1372, 1379 (S.D.N.Y.1976), *aff'd*, 556 F.2d 554 (2d Cir. 1977).

Plaintiffs would encounter significant hurdles in establishing liability under both Section 10(b) of the 1934 Act and Section 11 of the 1933 Act.

*Section 10(b)*

Proving scienter on the part of the settling defendants would be a significant obstacle for plaintiffs to overcome. See *Hochfelder, supra.*

In sustaining the convictions of certain directors and officers of Stirling Homex for securities and mail fraud, the Court of Appeals observed that the auditors, Peat, Marwick and Harris, Kerr, were repeatedly deceived by the management of Stirling Homex, which failed to inform the auditors of material information. *United States v. Stirling*, 571 F.2d 708, 715–16, 721, 724, 726–27 (2d Cir.), *cert. denied*, 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978). In addition, the Court of Appeals observed that the auditors had "no obligation to ferret out proof of wrongdoing." *Id.* at 735.

Plaintiffs would encounter similar problems in attempting to prove scienter on the part of Merrill Lynch, which, in preparing reports on the financial condition of Stirling Homex, may well have relied in part on information in the public financial statements certified by Peat, Marwick and Harris, Kerr. Plaintiffs would be required to prove that, despite such reliance, Merrill Lynch was on notice of or had reason to suspect the purported falsity of representations in its reports.

Plaintiffs would face the additional hurdle of establishing a connection or causal relationship between the alleged misrepresentations made by Merrill Lynch and the damages suffered. See, e. g., *Holdsworth v. Strong*, 545 F.2d 687, 695 (10th Cir. 1976), *cert. denied*, 430 U.S. 955, 97 S.Ct. 1600, 51 L.Ed.2d 805 (1977); *Chasins v. Smith, Barney & Co.*, 438 F.2d 1167 (2d Cir. 1970). The research reports published by Merrill Lynch were not distributed to the general public. Rather, they were distributed to Merrill Lynch customers at the discretion of Merrill Lynch account executives. Class members who did not read the material would have difficulty demonstrating a causal connection between the reports and their alleged damages.

4. *See* note 3 *supra.*

474

*Section 11*

■ The Section 11 claims against Merrill Lynch and Peat, Marwick are based on the alleged falsity of the registration statement for the public offering of July 29, 1971 and may be asserted only by purchasers of preferred stock. Since Merrill Lynch and Peat, Marwick were not issuers, they have a due diligence defense to Section 11 claims. 15 U.S.C. § 77k. In connection with the due diligence defense of the auditors, Peat, Marwick, it will be recalled that the Court of Appeals observed that the auditors had "no obligation to ferret out proof of wrongdoing," *Stirling, supra* at 735, and that the management of Stirling Homex deceived the auditors and failed to inform them of material information. *Stirling, supra* at 708, 715–16, 721, 724, 726–27. In connection with the due diligence defense of Merrill Lynch, it could be argued that Merrill Lynch relied in part on information in the public financial statements certified by the auditors.

Moreover, Merrill Lynch and Peat, Marwick could raise the defense of the statute of limitations, contending that Section 13 of the 1933 Act bars the Section 11 claims because they were not made within one year after the discovery of the fraud.

### CONCLUSION

■ It appears that close to 25,000 notices of the September 20 hearing were sent to the members of the class at least 47 days before the hearing. Only two objections were received, neither of which questioned the adequacy of the amount offered in the proposed partial settlement. Therefore, having in mind the factors previously discussed, which indicate that a trial would be protracted and expensive, and the amount of $10,525,000, which has been paid by the settling defendants and is earning interest on behalf of the members of the class if the proposed partial settlement is approved, the Court finds that the proposed partial settlement is fair, reasonable and adequate. Accordingly, the Court approves the partial settlement set forth in the Stipulation of Settlement and the Plan for Distribution, which will terminate this litigation with respect to the settling defendants (Fed.R. Civ.P. 23(e)). The matter of attorneys' and accountant's fees will be the subject of a subsequent memorandum.

Settle judgment on notice.