NATIONAL SUPER SPUDS, INC., William R. Buster, Jr., Willard C. Shiner, Eugene P. Weisman, Richard Welts, Raymond Rothberg, Arthur S. Armstrong, Theodore Brinek, Capgain Holdings, Inc., and Heiz Romminger, individually and on behalf of all persons similarly situated, Plaintiffs-Appellees,

v.

NEW YORK MERCANTILE EXCHANGE, Clayton Brokerage Co. of St. Louis, Inc., Heinold Commodities, Inc., Thomson & McKinnon, Auchincloss, Kohlmeyer, Inc., Pressner Trading Corp., Jack Richard Simplot, J. R. Simplot Co., Simplot Industries, Inc., Peter J. Taggares, P. J. Taggares Co., C. L. Otter, Simtag Farms, Kenneth Ramm, A & B Farms, Inc., Hugh V. Glenn, Gearheart Farming, Inc., and Ed McKay, Defendants,

New York Mercantile Exchange, Clayton Brokerage Co. of St. Louis, Inc., John Richard Simplot, J. R. Simplot Co., Simplot Industries, Inc., Peter J. Taggares, P. J. Taggares Co., Clement L. Otter and Simtag Farms, Defendants-Appellees,

Dexter Richards, Objector-Appellant.

No. 518, Docket 80–7760.

United States Court of Appeals, Second Circuit.

Argued March 11, 1981.

Decided May 13, 1981.

---

A. Arnold Gershon, New York City, for objector-appellant.

Charles Platto, New York City (Cahill, Gordon & Reindel, William E. Hegarty, Rein, Mound & Cotton, Maurice Mound, New York City, of counsel), for defendant-appellee New York Mercantile Exchange.

Judah I. Labovitz, New York City (Pomerantz, Levy, Haudek & Block, New York City), for plaintiffs-appellees.

Robert C. Macek, New York City (Barrett, Smith, Shapiro, Simon & Armstrong, New York City), for defendant-appellee Clayton Brokerage Co. of St. Louis, Inc.

Before FRIENDLY, MANSFIELD and KEARSE, Circuit Judges.

FRIENDLY, Circuit Judge:

This appeal from an order of Chief Judge MacMahon of the District Court for the Southern District of New York concerns one of the three actions in that district relating to the May 1976 default of Maine potato futures contracts with which we dealt in *Leist v. Simplot*, 638 F.2d 283 (2d Cir. 1980), *cert. granted*, 450 U.S. 910, 101 S.Ct. 1346, 67 L.Ed.2d 332 (1981). Familiarity with the opinions in that case is assumed. The order was made in the third of the actions there described, a consolidated class action (hereafter "the NSS class action") in which National Super Spuds, Inc. and nine others were plaintiffs and New York Mercantile Exchange (NYME), Clayton Brokerage Co. of St. Louis, Inc. (Clayton), Pressner Trading Corp. (Pressner), Jack Richard Simplot, and thirteen others were defendants. The first amended complaint alleged that "[e]ach of the named plaintiffs purchased May 1976 Maine Potato Future Contracts ('Contract or Contracts') on the Exchange and was damaged in liquidating said Contracts between April 13, 1976 and the close of trading on the Exchange on May 7, 1976." The action was brought on behalf of the named plaintiffs and "all other persons who held a net long position in Contracts and who liquidated their long position in said Contract between April 13, 1976 *and* the close of trading on the Exchange on May 7, 1976." (Emphasis in original.) By order dated August 15, 1977, *National Super Spuds, Inc. v. New York Mercantile Exchange*, 77 F.R.D. 361, 375, Judge MacMahon allowed certification of the class described in the complaint, and on December 15, 1978, the Clerk sent a notice of such certification addressed to class members similarly defined. The notice advised that:

A final judgment entered in this case, whether favorable or unfavorable to plaintiffs, will include, and will be binding upon, all persons whom the court ultimately finds to be members of the class and who do not request exclusion.

Any member of the class desiring exclusion was instructed to send a request to the Clerk which had to be postmarked by Janu-

ary 29, 1979, 45 days following the date of the notice. Objector-appellant Dexter Richards filed such a request on January 17, 1979.

Before the class certification Richards had brought an action in his own behalf in the District Court for the District of New Hampshire against many of the defendants in the class action. The complaint generally alleged the same types of wrongful action that the NSS complaint alleged. However, it sought damages not only with respect to 60 May 1976 long contracts which Richards apparently liquidated at a loss before May 7, 1976, but also, as against NYME and its president, with respect to 12 long contracts on which sellers defaulted after that date. This action was transferred to the Southern District of New York and coordinated for discovery purposes with the NSS class action and the other actions but was never consolidated with the NSS class action.

By letter dated February 14, 1979, counsel for Richards advised the court that Richards had decided to repudiate his opt-out decision and to rejoin the NSS class action. On April 27, 1979 his counsel, Jay W. Kaufmann, now deceased, entered into a stipulation with counsel for the defendants in the New Hampshire action discontinuing the latter, which on May 9, 1979 was incorporated in an order entered by Judge Mac-Mahon discontinuing Richards' action. The stipulation (except for the signatures) is set forth in the margin.[1]

Prior to the discontinuance of Richards' individual action and even prior to the sending of the notice of class certification, some of the defendants, essentially Simplot and

his associates, submitted to counsel for the class plaintiffs, on September 21, 1978, a proposal to settle the class action against them for $575,000. This sum, after deduction of administrative costs and the fees and expenses of plaintiffs and their counsel, was to be applied

> to the payment of all persons who held a net long position in May 1976 Maine Potato Future Contracts ("May contracts") and who liquidated such long position between April 13, 1976, and the close of trading on the New York Mercantile Exchange on May 7, 1976.

Various members of the class, including the plaintiffs in the two other actions dealt with in our *Leist* opinion, *supra*, 638 F.2d 283, and Richards, were expressly excluded from the provisions in the proposed settlement in which the plaintiffs and the settling defendants were to release each other from any claims which were asserted or which might have been asserted with respect to any of the matters alleged in the complaint. The proposal was accepted by counsel for the class plaintiffs, subject to embodiment in a formal stipulation and court approval. Early in March 1979 NYME and Clayton entered into a letter agreement with lead counsel for the plaintiffs in the NSS class action wherein each defendant would pay $65,000 in settlement of the plaintiffs' claims. This letter agreement stated that the formal settlement "will include appropriate details such as set forth in the September 21, 1978, letter agreement" between counsel for the class plaintiffs and the Simplot defendants. There is nothing that demonstrates that

1. IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned attorneys for the parties that, plaintiff Dexter Richards, having elected to become a member of the Class Plaintiffs in an action encaptioned *National Super Spuds, Inc., et al. v. The New York Mercantile Exchange, et al.*, 76 Civ. 2375, 2554, 2571 and 2594, (LFM), an action arising out of the same set of facts as the above-captioned action and raising identical questions of fact and law, this action should be, in the interests of judicial economy, and hereby is, discontinued as against all those defendants the attorneys for which

have affixed their signatures to the schedule attached hereto. Plaintiff Dexter Richards will hereinafter prosecute his causes of action against those defendants the attorneys for which have affixed their signatures to said schedule, as a member of the aforementioned class, appearing by his attorney, Jay W. Kaufmann, Esq. Plaintiff Dexter Richards will remain responsible for that share of the Special Master's fees allocated to his causes of action by the Special Master and approved by the Honorable Lloyd F. Mac-Mahon, United States District Court, Southern District, New York.

Richards had any knowledge of these agreements or of negotiations concerning them when he rejoined the class.

On May 29, 1979, Judge MacMahon entered an order, 470 F.Supp. 1256, granting motions to dismiss the complaint in the NSS class action, as well as two independent actions, to the extent that these relied upon violations of the Commodities Exchange Act.[2] Despite this the Simplot defendants (who had not joined in the motion to dismiss), NYME and Clayton, and the NSS plaintiffs agreed to proceed with the settlement, and the NSS class action plaintiffs, in contrast to the plaintiffs in the two other consolidated actions, appealed to this court only as against movants who had not agreed to settle, to wit, Heinold Commodities, Inc. (Heinold) and Thomson & McKinnon, Auchincloss, Kohlmeyer, Inc. (Thomson).

Later in 1979 Richards, now represented by a new attorney, A. Arnold Gershon, Esq., brought a class action against NYME, Clayton, Heinold and Thomson in the Supreme Court of the State of New York for New York County. Richards brought this action "on his own behalf and as the representative of a class consisting of all persons who had held open long contracts (i. e. executory contracts to purchase) of May 1976 Maine potato futures traded at the Exchange after the close of trading on May 7, 1976." The class was claimed to comprise some 200 persons. The complaint alleged that at the conclusion of trading on May 7, 1976, there were 1911 open unliquidated contracts wherein plaintiff and the class were buyers and the Exchange was the seller;[3] that, as to 911 of these contracts, delivery of less than the 500 cwt. required was made; and that no deliveries were made on the remaining 1000. Plaintiff sought to recover damages for the incomplete deliveries and the failure to deliver.[4]

On December 14, 1979, lead counsel for the NSS class plaintiffs and counsel for the Simplot defendants, NYME and Clayton entered into a formal stipulation of settlement. This included a paragraph, which had been included in substance in the previous letter agreement between the class plaintiffs and the Simplot defendants, reading as follows:

7. For purposes of clarity, it is intended that the effect of the final judgment should be as follows:

The settling defendants, their affiliates, and each of them shall be released from any and all claims of every nature and description asserted, or which might have been asserted by plaintiffs and the class members or any of them against the settling defendants, their affiliates, or any of them based upon, arising out of, or in any way respecting any act or omission relating to any of the matters or transactions set forth in the Complaint. (Proof of claim forms shall contain a release in conformity with the provisions of this paragraph.)

Paragraph 18 of the settlement stated:

18. Upon final judgment approving this settlement the plaintiffs and the settling defendants and the settling defendants among themselves shall be deemed to have released each other completely from any and all claims, demands, or choses in action relating to the May Contract, except it is understood that the following members of the plaintiff class shall not be included in this release made by or in favor of the settling defendants:

Harold Collins

Wayne County Produce, Inc.

---

2. This operated as a complete dismissal with respect to NYME.

3. The reference was apparently to the clearinghouse, see *Leist v. Simplot, supra,* 638 F.2d at 287.

4. Although arising from the same series of acts described in our *Leist* opinion, 638 F.2d at 288–91, the claims are different from those asserted in the NSS action. Plaintiffs in the NSS action had liquidated their long contracts and sought essentially a tort recovery for losses incurred as a result of having been required to do so at prices lower than would have prevailed but for defendants' alleged wrongful acts. Richards' action was brought on behalf of persons who had not liquidated their contracts and sought essentially to recover for breach of contract.

Casper Mayrsohn
Lynnewood Export Corp.
Casper Mayrsohn, Inc.
Manning Stoller
MFX Commodities, Inc.
Bushwick Commission, Inc.
Dale Grant Jackson
Neil Leist
Philip Smith
Howard Berenson
INCOMCO
Meridian Equities Corp.
James Vardamis
Joseph Strobl
Other class members who have opted out

As later explained by counsel for NYME, these provisions were intended to bar members of the NSS class, with the exception of those listed in paragraph 18, not only from bringing the claims asserted in the NSS action—claims based on liquidated contracts—but also from bringing any other claims against the defendants with respect to the events described in the NSS complaint—including claims based on contracts that were not liquidated by May 7, 1976. The stipulation of settlement provided that members of the class submitting valid claims would divide the settlement proceeds in proportion to the number of contracts they had liquidated at a loss, with contracts liquidated between April 22 and April 30 valued twice as high as contracts liquidated before April 22 and contracts liquidated between May 1 and May 7 valued three times as high as contracts liquidated before April 22. Persons in Richards' position were thus to release claims based on both liquidated and unliquidated contracts in return for payments that were to be determined solely on the basis of the contracts they had liquidated.

Upon the filing of the stipulation the District Court directed the mailing and publication of a form of notice submitted by counsel. The mailed notice began by saying that it was

being mailed to all persons who held net long positions in May 1976 Maine Potato Futures Contracts and who liquidated their long positions between April 13, 1976 and the close of trading on May 7, 1976. If you are such a person, then you are a member of the class on whose behalf consolidated class actions have been and are being prosecuted in the United States District Court for the Southern District of New York.

The notice described the formula for distributing the proceeds of the settlement among class members. No mention was made of the provision in the settlement agreement barring all claims of class members whether or not asserted in the NSS action, notably claims of members with respect to contracts they had not liquidated. The notice advised that

For a complete description of the terms of the settlement, reference may be had to the Stipulation of Settlement which is on file and available for inspection in the Office of the Clerk of the Court, Foley Square, New York, New York in File No. 76 Civ. 2375 (LFM).

The published notice was similarly addressed. It made no mention of the scope of the releases but indicated that

The nature of the settlement and matters related thereto are more fully described in the notice of settlement hearing which has been mailed to class members.

In compliance with the procedure outlined in the mailed notice, Richards filed written objections on the ground that the breadth of the releases might bar his state court class action. At the settlement hearing Richard M. Meyer, Esq. of Pomerantz, Levy, Haudek & Block, lead counsel for the NSS class plaintiffs, stated that Richards wanted "something written into the settlement stipulation saying that whatever happens in this court doesn't affect a claim that he has in the State court with respect to contracts which were defaulted". Mr. Meyer conceded that "[o]ur class does not purport to represent those people or those claims", but noted that NYME "apparently takes the view that nevertheless the settlement stipulation releases those claims." He emphasized that this was not the intention

of the class plaintiffs and that he would so testify if a motion were made to dismiss the state court action on the ground that it was barred by the settlement. The following colloquy then ensued:

THE COURT: Does the settlement expressly state that it is not your intention to settle any of those claims? If not, why can't it?

MR. MEYER: This is where the dispute arises. I have no objection to it but the Exchange does. They don't want to put that in there because they want to argue in the State court that these claims are indeed barred, and so I say, well, if you don't—

THE COURT: In short, they want to leave it up in the air?

MR. MEYER: Right. I say that your Honor does not have to decide that.

It is our position that we did not release those claims. I would have no objection to putting it in the settlement stipulation, but since the Exchange objects to it, let them fight it out in the State court. I don't think it need detain your Honor.

Later William E. Hegarty, Esq., counsel for NYME, addressed the issue. After developing the facts with respect to Richards' opting out and then back in and discontinuing the New Hampshire action, he stated that the language of the settlement agreement had been framed, as indeed it appears to have been, with the precise purpose of barring Richards' New York state action. He indicated that stipulations of settlement frequently barred claims of class members not at issue in the class action and that he had himself negotiated two such settlements with the Pomerantz firm that had been approved by other judges of the Southern District.[5] Finally, Mr. Gershon,

appearing for Richards, pointed out that the claims asserted by Richards in the state court class action on behalf of himself and others who had held unliquidated contracts were distinct from the claims asserted in the NSS class action and argued that the court should not approve a settlement containing language that might be held to bar them. He indicated that the claims for default on the unliquidated contracts might aggregate $7,000,000, without stating how many such claims were held by persons, who, like Richards, were also within the NSS class. In an affidavit filed after the hearing, Mr. Gershon amplified on his oral presentation, questioning the failure of the notice of settlement to warn class members who also held claims on contracts that were not liquidated at the close of business on May 7, 1976, that such claims might be barred by the settlement, and urging that the court either disapprove the settlement or approve it only on the condition that it be amended to make clear that claims with respect to the defaulted contracts would not be barred.

On May 5, 1980, the district court issued an opinion approving the settlement and fixing the compensation and expenses of plaintiffs' attorneys and of a special master who had presided over the discovery. Recognizing that Richards' objection was "somewhat more troublesome" than others he had considered, the judge nevertheless rejected it. Declining "to speculate on the *res judicata* effect of this settlement on claims brought in other courts," the judge thought that any ambiguity did not preclude him "from approving the settlement as a whole as fair and reasonable." He stated that "[f]oremost in our decision" was the fact that Richards' concern "would have been obviated entirely by opting out of the

---

5. *Shapiro v. Consolidated Edison Co. of New York, Inc.*, 74 Civ. 1906 (approved by Judge Pierce, Jan. 2, 1979); *Jezarian v. Csapo*, S.D. N.Y., 479 F.Supp. 469 (1979) (Sterling Homex class action). Judge MacMahon inquired whether there had been any opposition to these settlements; Mr. Hegarty couldn't recall any and in fact there was none. In *Cannon v. Texas Gulf Sulphur Co.*, 55 F.R.D. 308 (S.D. Y.1972) (Bonsal, J.), also cited by appellees,

there was similarly no objection to the provisions of the settlement apparently releasing claims not included in the complaint. In light of the absence of objections or evidence of any judicial consideration of the subject, the approval of these settlements cannot be deemed to establish the propriety of approving the release of claims not included in the class action complaint.

class at any time before the settlement hearing." When Richards brought to the court's attention by motion for reargument that the last day for opting out was January 29, 1979, long before the settlement was concluded, the judge readily recognized his error on that point but, in a second opinion, adhered to his decision rejecting Richards' objection. The court reiterated its unwillingness to decide whether the release would in fact bar the state court action. It then listed the considerations leading it to believe that Richards' objections did not warrant disapproval. These were:

(1) Richards was the only class member to have objected on this ground and "the acquiescence by the overwhelming majority of the class is clearly a compelling argument in favor of the fairness of the settlement," citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

(2) Richards made a conscious decision to rejoin the class after having opted out, thus demonstrating not only an awareness of the ramifications of class membership but an implicit acceptance of class counsel.

(3) "[S]ince the Exchange has stated it would not accept a modification making it clear that the parties do not intend to bar Richards' state court claims, disapproval of an otherwise fair settlement would subject the class as a whole to the unwarranted risk and expense of proceeding to trial. Whatever its res judicata effects on Richards' action, the settlement is thus clearly in the best interests of the entire class."

Richards filed a timely notice of appeal from the order approving the settlement.

■ We deal at the outset with appellees' argument that approval of the settlement may be harmless to Richards and others similarly situated since the New York courts could hold that the release did not bar their claims with respect to contracts that had not been liquidated. While it is true that actual decision on this issue will rest with the New York courts, we must assume that they will interpret the settlement to mean what it says. Experienced counsel knew precisely what they wanted to achieve and drafted appropriate language to that end. The only plausible basis on which a New York court could hold that the language did not have its intended and clearly stated effect would be if it found the district court had no power to approve a settlement of a class action that barred claims of class members not within the description of the class. A federal court should determine for itself whether it has that power and may properly exercise it—not pass over the question because a state court may assume the unenviable task of deciding that its act was a nullity.

■ We likewise find no force in the court's first ground for approval. Lack of objection by the great majority of claimants means little when the point of objection is limited to a few whose interests are being sacrificed for the benefit of the majority. It means even less when, as here, the notice of settlement did not adequately apprise class members who also held claims in respect of unliquidated contracts that these too were being placed on the block although these class members were to receive nothing in return.

With these two points out of the way, a useful means of approaching the problem is to consider whether the settlement could properly have been approved over Richards' objection if he had never entered into the stipulation discontinuing his New Hampshire federal court action or taken any of the other steps that are claimed to estop him from objecting to the provisions of the settlement here in question. We have not the slightest doubt that approval of the settlement would have been improper in these circumstances. The most fundamental principles underlying class actions limit the powers of the representative parties to the claims they possess in common with other members of the class.

■ Here the complaint was brought on behalf of all persons who liquidated long positions in May 1976 Maine potato future contracts between April 13, 1976 and the close of trading on May 7 of that year. The

gravamen of the complaint was the claim that defendants' wrongful conduct had depressed the price of the contracts and had thereby caused injury to persons who liquidated long positions during that period. The complaint did not state any claims based on any contracts other than those liquidated between April 13 and May 7. The district court's opinion accompanying its order certifying the class likewise did not suggest in any way that plaintiffs were authorized to represent class members with respect to any claims other than those the possession of which made one a member of the class, namely, claims based on liquidated contracts. Indeed, the court predicated its decision to certify the class on a finding that "[e]ach class member has an identical interest in proving the existence of the alleged conspiracy among the Short Sellers and Short Brokers, the lack of proper supervision by the Exchange, and the resulting depression in the price of May Contracts." 77 F.R.D. at 374. The notice subsequently sent to class members likewise referred only to claims based on liquidated contracts; it gave no indication that the action would concern any other claims. At no point did plaintiffs seek authority to represent members of the class with respect to claims based on unliquidated contracts. Even if they had sought such authority, their request would have been refused on the ground that they themselves held no unliquidated contracts after May 7. The named plaintiffs in a class action "cannot represent a class of whom they are not a part," *Bailey v. Patterson*, 369 U.S. 31, 32–33, 82 S.Ct. 549, 550–51, 7 L.Ed.2d 512 (1962) (*per curiam*), and can represent a class of whom they are a part only to the extent of the interests they possess in common with members of the class. See, e. g., *Gesicki v. Oswald*, 336 F.Supp. 371, 373–74 (S.D.N.Y. 1971) (three-judge district court) (Kaufman, J.) (juveniles challenging statute permitting commitment of "wayward minors" to penal institutions for adult criminals can sue only on behalf of juveniles committed pursuant to the subsections of the statute under which they themselves were committed), *aff'd mem.*, 406 U.S. 913, 92 S.Ct. 1773, 32 L.Ed.2d 113 (1972); *Black Coalition v. Portland School Dist. No. 1*, 484 F.2d 1040, 1043 (9th Cir. 1973) (each plaintiff challenging constitutionality of school disciplinary procedures may represent "a class which was suspended in a similar manner" but plaintiffs cannot challenge "those portions of the regulations and procedures pursuant to which no individual plaintiff was disciplined"). In light of all this it is not surprising that plaintiffs' lead counsel conceded at the settlement hearing that the NSS class action plaintiffs did not purport to represent members of the class or anyone else with respect to claims based on unliquidated contracts.[6]

Plaintiffs were thus empowered to represent members of the class solely with respect to the contracts in which all members of the class had a common interest: contracts liquidated between April 13 and May 7. It is essential to understand the consequences of this limitation. If the case

---

**6.** A class will not be certified in the first place unless "the claims ... of the representative parties are typical of the claims ... of the class." Rule 23(a)(3). Rule 23 imposes the specific requirement that the representative parties possess claims typical of the claims of the class in addition to the general requirement that "the representative parties will fairly and adequately protect the interests of the class." Rule 23(a)(4). No matter how capable their attorneys, no matter how great their financial resources, no matter how convinced the court is of their vigor and good faith, the named plaintiffs cannot sue on behalf of the class unless they possess claims typical of the class. "There is nothing in the rule to suggest that the zeal or talent of the 'representative' plaintiff's attorney can supply this omission." *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 465 (9th Cir. 1973). As Judge Weinstein has observed, "[t]he theory is that if the claims and defenses are typical then there will be every reason for the representatives to support their own claim and so advance the claims of others in a like position." *Rosado v. Wyman*, 322 F.Supp. 1173, 1193 (E.D.N.Y.1970), aff'd, 437 F.2d 619 (2d Cir. 1970), aff'd mem., 402 U.S. 991, 91 S.Ct. 2169, 29 L.Ed.2d 157 (1971). This justification for permitting the representatives to sue on behalf of the class has no application to claims of class members in which the representatives have no interest and which, as shown here, they are willing to throw to the winds in order to settle their own claims.

had proceeded to trial and a judgment had been entered in favor of the defendants, that judgment would have barred all members of the class who had not opted out from bringing any claim based on contracts they liquidated. Such a judgment would *not* have barred members of the class from bringing any other claim they might be able to assert against the defendants, including claims based on contracts unliquidated at the close of trading on May 7.

■ If a judgment after trial cannot extinguish claims not asserted in the class action complaint, a judgment approving a settlement in such an action ordinarily should not be able to do so either. It goes without saying that any claims based on the May 1976 contracts were, in the first instance, subject to the control of the individuals who owned the contracts. Under the circumstances here being considered, the named plaintiffs were authorized to represent other members of the class solely with respect to liquidated contracts. They were never authorized to represent such members with respect to unliquidated contracts. Having received authority to represent class members solely with respect to liquidated contracts, plaintiffs had no power to release any claims based on any other contracts.[7]

■ The inadequacy of the representation provided by the named plaintiffs is apparent from examination of the settlement itself. That agreement requires Richards to release claims based on both liquidated and unliquidated contracts in return for a portion of the settlement proceeds that is determined *solely* on the basis of the contracts he liquidated by May 7. The formula for allocating the settlement fund does not provide for any additional payment to Richards or persons similarly situated in return for the release of claims based on unliquidated contracts. There is no justification for requiring Richards or persons similarly situated to release claims based on unliquidated contracts as part of a settlement in which payments to class members are to be determined solely on the basis of the contracts they liquidated.[8] This view of the law is recognized in an article by a member of the firm serving as lead counsel for the NSS class from which we have often quoted in other contexts. Haudek, The Settlement and Dismissal of Stockholders' Action—Part II: The Settlement, 23 Sw.L.J. 765 (1969). The author states that "[i]n *representative* suits [i. e., class actions, as opposed to derivative suits] there is no one with power to give a release of the class rights in addition to the judgment." *Id.* at 773 (emphasis in original). "The protection afforded the defendants by the *judgment* rests on its res judicata effect and is, therefore, limited to the claims alleged in the pleadings." *Id.* (emphasis in original).

In relying on cases, notably *Shlensky v. Dorsey*, 574 F.2d 131 (3d Cir. 1978) (Maris, J.), holding that derivative suit settlements may release claims not pleaded in the complaint, appellees overlook the fundamental difference between derivative suits and class actions. The plaintiff in a derivative suit is suing on behalf of the corporation. In a derivative suit settlement such as that approved in *Shlensky* the legal entity whose

---

7. We assume that a settlement could properly be framed so as to prevent class members from subsequently asserting claims relying on a legal theory different from that relied upon in the class action complaint but depending upon the very same set of facts. This is not such a case. The settlement before us would bar Richards and others similarly situated from asserting claims, distinct from those represented by the class action plaintiffs, which depend not only upon a different legal theory but upon proof of further facts, namely, the holding of unliquidated contracts after May 7, wrongful default on those contracts, and the damages caused by the default.

8. To be sure, defendants might have offered less if the settlement had not included provisions releasing all claims concerning the matters covered in the complaint, rather than simply the claims which were actually asserted in the complaint and which were the basis for certifying the class. But it does not follow that Richards can be required to share with persons who liquidated all their contracts by May 7 whatever sum defendants were willing to pay because the settlement included the release of claims based on unliquidated contracts.

unpleaded claims are being released—the corporation—is a party to the settlement. The corporation has the power to release its claims whether asserted in the complaint or not. Although there are other considerations that require a court in passing on such a settlement to scrutinize carefully the scope of the releases,[9] the court may be confident that the parties have the power to make them. In the present case, by contrast, the parties to the settlement have attempted to release claims with respect to which none of them was authorized to represent members of the class.[10] *Shlensky* is no precedent for what was done here.

*Wellman v. Dickinson*, 497 F.Supp. 824 (S.D.N.Y.1980), *aff'd by order*, 647 F.2d 163 (2d Cir. 1981), similarly does not support a settlement that forces class members to release claims not asserted in the class action. There, as Judge MacMahon had initially but mistakenly thought to be the case here, the settlement agreement provided an opportunity to opt out, 497 F.Supp. at 829, 833. Furthermore, although the settlement provided for the dismissal of "[a]ll the 14(d), 10(b) and Rule 10b–13 claims arising out of the transaction that were, could have been or should have been pleaded", *id.* at 828, there is no indication that the complaint in the settled action failed to include any claims on these provisions that the objectors asserted in their separate action.[11]

■ It thus appears that the judge's third reason for approving the settlement, namely, that it is fair and reasonable to the class as a whole, will not pass muster. An advantage to the class, no matter how great, simply cannot be bought by the uncompensated sacrifice of claims of members, whether few or many, which were not within the description of claims assertable by the class. Under the settlement a class member holding one liquidated and one unliquidated contract receives no more than another class member holding only one liquidated contract. Mere statement suffices to show how far this departs from principles of equity.

What remains to be considered is whether the case stands differently because of Richards' actions prior to the settlement—the second reason given by the district court for approving it.

■ The mere fact that Richards withdrew his decision to opt out and returned to the class is without significance. This was long before he had notice of the settlement and there was no reason to think that prosecution or settlement would involve claims relating to anything other than the liquidated contracts referred to in the notice of certification.[12] Whatever force there is in the argument lies in the statement in the stipulation discontinuing the New Hampshire action that "[p]laintiff Dexter Richards will hereinafter prosecute his causes of action against those defendants the attorneys for which have affixed their signatures to said schedule, as a member of the aforementioned class [the NSS class], appearing by his attorney, Jay H. Kaufmann, Esq." For two reasons we conclude that this does not suffice to justify approval of the settlement.

---

9. See, e. g., *Winkelman v. General Motors Corporation*, 48 F.Supp. 490, 496 (S.D.N.Y.1942); *Wolf v. Barkes*, 348 F.2d 994, 997–98 (2d Cir.), *cert. denied*, 382 U.S. 941, 86 S.Ct. 395, 15 L.Ed.2d 351 (1965).

10. Derivative suit settlements releasing claims not asserted in the complaint are also distinguishable from the settlement here because the derivative plaintiffs and other shareholders ordinarily have a common interest, in proportion to their share of the total stock of the corporation, in any unpleaded claims being released. There is usually no danger of the plaintiffs' endeavoring to obtain a better settlement by sacrificing the claims of others at no cost to themselves.

11. This court's order stated that the objectors' action was brought "on behalf of the same class."

12. Although appellees might have been entitled to prevent Richards from rejoining the class if they had objected to his decision to do so, they did not object and cannot now claim that because they might have objected Richards must accept a settlement that releases claims over which the named plaintiffs had no power and for which Richards is to receive nothing in return.

The first reason is that we do not agree that the stipulation constituted a representation by Richards of an intent to rely solely on the NSS action to recover for losses suffered on May 1976 potato futures contracts. Although the stipulation stated that Richards would "prosecute his causes of action ... as a member of the aforementioned class", this did not necessarily mean that Richards would seek recovery only as a member of the NSS class on all his causes of action including those on which the class could not recover. The more reasonable inference is that this sentence in the stipulation was nothing more than a reference to Richards' then recent letter to Judge MacMahon repudiating his decision to opt out of the class; in stating that he would prosecute his causes of action as a member of the NSS class, Richards would simply have been reiterating his intention to rejoin the class, namely, those holding claims on liquidated contracts. Although the record contains an affidavit by Charles Platto, Esq., a member of the firm representing NYME, stating that, after he explained to Richards' then counsel that the NSS action did not include claims on unliquidated contracts, the latter told him that he nevertheless "felt" that he would proceed with prosecuting all claims as part of the class action, we cannot attach much significance to this recollection in light of the fact that the NSS action was limited to liquidated contracts and Mr. Kaufmann's rejection of a suggestion by counsel for one of the defendants that the stipulation be worded so as to discontinue the action "with prejudice" and to state in its final sentence that "[p]laintiff Dexter Richards will hereinafter prosecute any and all causes of action which he has or may claim to have against the various defendants only as a member of the aforementioned class, appearing by his attorney, J. W. Kaufmann, Esq." [13] When we add to this that F.R.Civ.P. 41(a)(1) expressly provides that "[u]nless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice", it becomes apparent that any assumption by the appellees that Richards would not pursue a separate suit with respect to his unliquidated contracts would have been unreasonable.[14]

The second reason is that no one knows how many other class members like Richards there may be. In his first opinion Judge MacMahon recognized that "clearly there may be others as well." The absence of appearance and objection by them at the settlement hearing is sufficiently explained by the inadequacy of the mailed and published notices. No one holding claims on both liquidated and unliquidated contracts would have been adequately alerted to the possibility that the latter as well as the former were being released—in the case of the latter without consideration—as to be impelled to examine the stipulation of settlement. In approving the settlement of a class action a court has a responsibility to protect members of the class who have had no opportunity to protect themselves. See *Norman v. McKee*, 431 F.2d 769, 774 (9th Cir. 1970), *cert. denied, I. S. I. v. Myers*, 401 U.S. 912, 91 S.Ct. 879, 27 L.Ed.2d 811

---

**13.** While Mr. Kaufmann's death deprives us of any direct recollection by him of the conversation with Mr. Platto, an associate who worked with him on the Richards matter submitted an affidavit saying in part:

I can state categorically that Richards had no intention of "prosecuting *all* claims as part of the class action," since, as the Platto affidavit concedes, that would be impossible. I know of no such discussion between counsel as described in paragraph 10 of the Platto affidavit. It does not identify the individual who participated in that alleged discussion, nor does it give a date for the same.

**14.** The Platto affidavit mentioned earlier also states that prior to the filing of Richards' complaint in state court counsel for the NYME "advised Gershon that with respect to the claim on the defaulted contracts, a mechanism has been set up whereby the Exchange collected damages from the shorts for the benefit of the longs and that the Exchange was holding money for Richards which he could take down through his broker." There is no indication, however, that this fund would provide full compensation for losses suffered on defaulted contracts. If it did, the Exchange would have no reason to insist on the release of claims based on those contracts, for a trader could not obtain full compensation from the fund and then sue to recover a second time.

(1971); *Held v. Missouri Pacific R.R. Co.*, 64 F.R.D. 346, 347 (S.D.Tex.1974); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); Haudek, *supra*, at 792–93. With respect to claims on unliquidated contracts, the notice did not " 'fairly apprise the . . . members of the class of the terms of the proposed settlement' ". *Grunin v. Internat'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir.), *cert. denied*, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975) (*quoting Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 323 F.Supp. 364, 378 (E.D.Pa.1970), *modified on another ground and aff'd, Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30 (3d Cir. 1971)). Cf. *Penson v. Terminal Transport Co.*, 634 F.2d 989 (5th Cir. 1981).

In determining that the order approving the settlement must be reversed because of the unwarranted inclusion of a release of claims based on unliquidated contracts, we have given full weight to appellees' contentions that this may deprive the members of the class who wish to settle of even the modest benefits the settlement provides them.[15] If the matter is not settled and the Supreme Court should reverse our decision in *Leist v. Simplot, supra,* class members would have no federal claim against NYME and would be remitted to their antitrust claims against other defendants. As against this, we are not obliged to assume that, on remand, NYME, apparently the only settling defendant which has taken an unyielding position on the breadth of the release, might not have second thoughts or that, if it does not, the other settling defendants might not make a settlement excluding the offending language. We authorize the district judge to approve the settlement without further hearing if either of such developments occurs. In any event, whatever the effect on class members desiring to settle, as a court of equity we cannot sanction what was attempted here.

The order approving the settlement and awarding attorneys' fees and expenses is therefore reversed and the cause is remanded for further proceedings consistent with this opinion. We also vacate the order awarding fees to the Special Master and remand that phase of the proceeding to the district court to determine whether an award should now be made despite our decision with respect to the settlement.

---

**15.** The aggregate amount is $705,000 from which there is to be deducted $200,000 for class action plaintiffs' attorneys' fees and $75,000 for their expenses, leaving a net distributable amount of $430,000 plus interest. The first amended class action complaint had estimated damages of "many millions of dollars."