218 F.3d 132 (2nd Cir. 2000)
 JOEL A., MICHAEL D., ERIC R., DAVID S., MAXX R., AND RAY D., Intervenor-Plaintiffs-Appellants,
MARISOL A., by her next friend, Rev. Dr. James Alexander Forbes, Jr., by her next friend Raymunda Cruz, LAWRENCE B., by his next friend, Dr. Vincent Bonagura, THOMAS C., by his next friend, Dr. Margaret T. McHugh, SHAUNA D., by her next friend, Nedda de Castro, OZZIE E., by his next friends, Jill Chaifetz and Kim Hawkins,
DARREN F., DAVID F., by their next friends, Juan A. Figueroa, and Rev. Marvin J. Owens, BILL G., VICTORIA G., by their next friend, Sister Dolores Gartanutti, BRANDON H., by his next friend, Thomas H. Moloney, STEVEN I., by his next friend, Kevin Ryan, on their own behalf and behalf of all others similarly situated, WALTER S., RICHARD S., by their next friends, W.N. and N.N., grandparents, DANIELLE J., by her next friend, Angela Lloyd, Plaintiffs-Appellees,
v.
RUDOLPH W. GIULIANI, Mayor of the City of New York, MARVA LIVINGSTON HAMMONS, Administrator of the Human Resources Administration and Commissioner of the Dept. of Social Services of the City of New York, GEORGE E. PATAKI, Governor of the State of New York, JOHN JOHNSON, Commissioner of the New York Office of Children and Family fka Commissioner of the Dept. Social Services of the State of New York, NICHOLAS SCOPPETTA, in his official capacity as Commissioner of the New York City Administration for Children's Services, Defendants-Appellees.
 Docket No. 99-7218
August Term 1998
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued July 14, 1999
Decided: July 10, 2000
 
 Appeal from an order of the United States District Court for the Southern District of New York (Robert J. Ward, District Judge) approving class action settlement agreements between the Marisol plaintiffs and the City and State defendants.
 Affirmed.[Copyrighted Material Omitted]
 MARC FALCONE, Paul, Weiss, Rifkind, Wharton & Garrison (Daniel J. Leffell, Mariann Meier Wang, Tobias B. Wolff, Victoria Cook, Paul, Weiss, Rifkind, Wharton & Garrison, and Douglas Lasdon, David Pumo, Urban Justice Center, on the brief), New York, New York, for Intervenor-Plaintiffs-Appellants.
 
 
 1
 GRACE GOODMAN, Assistant Corporation Counsel (Larry A. Sonnenshein, Gail Rubin, Michael D. Hess, Corporation Counsel of the City of New York, on the brief), New York, New York, for Municipal Defendants-Appellees.
 
 
 2
 WILLIAM BRISTOW, Assistant Attorney General (Preeta D. Bansal, Solicitor General, Judith T. Kramer, Assistant Attorney General, Michael S. Belohlavek, Assistant Attorney General, Eliot Spitzer, Attorney General of the State of New York, on the brief), New York, New York, for State Defendants-Appellees.
 
 
 3
 MARCIA ROBINSON LOWRY, Children's Rights, Inc. (Susan Lambiase, Shirim Nothenberg, Children's Rights, Inc., and Karen Freedman, Lawyers for Children, Thomas F. Curnin, Ira J. Dembrow, Cahill Gordon & Reindel, David M. Brodsky, Jess A. Velona, Schulte Roth & Zabel LLP, on the brief), New York, New York, for Plaintiffs-Appellees.
 
 
 4
 RICHARD J. DAVIS, Weil, Gotshal & Manges LLP (Harris J. Yale, Janet L. Goldberg, Weil, Gotshal & Manges LLP, on the brief), New York, New York, for Amici Curiae The Judge David L. Bazelon Center for Mental Health Law, The National Center for Youth Law, Support Center for Child Advocates, Youth Law Center, Dean Bogart R. Leashore, Dean Thomas M. Meenaghan, Dean Ronald Feldman, Dean Mary Ann Quaranta, Dean Sheldon R. Gelman, Dean Roger A. Levin, and Dean Frances L. Brisbane in support of Appellees' Opposition to Intervenor's Appeal.
 
 
 5
 Before: WALKER, CABRANES, and SACK, Circuit Judges.
 
 JOHN M. WALKER, JR., Circuit Judge:
 
 6
 Intervenor-Plaintiffs-Appellants Joel A., Michael D., Eric R., David S., Maxx R., and Ray D. (the "Joel A. objectors" or "the appellants") appeal from an order and judgment of the United States District Court for the Southern District of New York (Robert J. Ward, District Judge) that approved a class action settlement between the class action plaintiff children and officials of New York City and New York State. The plaintiff class, consisting of children either in the custody of the New York City Administration for Children's Services ("NYCACS" or "ACS") or at risk of neglect or abuse and whose status is or should be known to NYCACS (collectively, "the plaintiffs"), alleged that they were deprived of appropriate city and state services and sought to hold accountable New York City Mayor Rudolph Giuliani, the Administrator of the Human Resources Administration and Commissioner of the Department of Social Services, Marva Livingston Hammons, the NYCACS Commissioner, Nicholas Scoppetta, as well as George E. Pataki, Governor of New York, and Brian Wing, Acting Commissioner of the Department of Social Services of the State of New York (collectively, "the defendants"). The appellants, a class represented by Joel A., unsuccessfully objected to a settlement between the plaintiffs and defendants on the ground that it imposes overbroad restrictions on the class members' right of access to the courts for a specified period in exchange for illusory relief, and therefore that the district court abused its discretion in approving the settlement. Because we find that the district court did not abuse its discretion, we affirm the decision below.
 
 BACKGROUND
 
 7
 The detailed allegations of the named plaintiffs, eleven children who claim they were deprived of the services of the New York City child welfare system to their extreme detriment, are fully set forth in the district court's opinion, Marisol A. ex rel. Forbes v. Giuliani, 929 F. Supp. 662, 669-72 (S.D.N.Y. 1996) ("Marisol I"), and it is unnecessary to describe them further here. It will suffice to say that in December 1995, the plaintiffs, acting through their adult next friends, sought declaratory and injunctive relief against the defendants claiming injuries caused by systemic failures of the City's child welfare system. The complaint charged that the defendants, in operating that system, had violated an array of federal and state laws, including the First, Ninth and Fourteenth Amendments to the United States Constitution, the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 620-628, 670-679a, and the Child Abuse Prevention and Treatment Act, 42 U.S.C. §§ 5101-5106a, among others. See Marisol I, 929 F. Supp. at 672.
 
 
 8
 On June 18, 1996, the district court granted class certification under Fed. R. Civ. P. 23(b)(2) to a broad class of plaintiffs subject to the purview of the New York City Child Welfare Administration, currently known as ACS. The district court defined the class as "[a]ll children who are or will be in the custody of [ACS], and those children who, while not in the custody of ACS, are or will be at risk of neglect or abuse and whose status is known or should be known to ACS." Marisol I, 929 F. Supp. at 693. We affirmed the certification, but directed the district court to break the class into various subclasses, and to identify for each subclass (1) the discrete legal claims at issue, (2) the named plaintiffs aggrieved under each such discrete claim, and (3) the subclasses represented by each named plaintiff. Marisol A. ex rel. Forbes v. Giuliani, 126 F.3d 372, 379 (2d Cir. 1997) (per curiam) ("Marisol II").
 
 
 9
 On remand, the district court certified three subclasses: (1) children whom the defendants know or should know have been abused or neglected/maltreated by virtue of a report of abuse or neglect/maltreatment; (2) children in families in which there is an open indicated report of abuse or neglect; and (3) children in the custody of ACS. Marisol A. ex rel. Forbes v. Giuliani, No. 95 Civ. 10533 (RJW), 1998 WL 199927, at *5 (S.D.N.Y. Apr. 23, 1998) ("Marisol III"). In May 1998, the district court granted intervention to three additional named plaintiffs and identified the subclasses they represented and the legal claims they asserted. Marisol A. ex rel. Forbes v. Giuliani, No. 95 Civ. 10533 (RJW), 1998 WL 265123, at *2-4 (S.D.N.Y. May 22, 1998) ("Marisol IV"). Although this process provided an opportunity for any objector to challenge the subclass designation, the Joel A. objectors, appellants here, did not challenge the adequacy of the class representatives nor appeal from the certification of the subclasses. There is no dispute that the Joel A. objectors are members of the third subclass of Marisol plaintiffs: children in the custody of ACS.
 
 I. The Settlement Agreements
 
 10
 After more than two years of intensive discovery and on the eve of trial in July 1998, the parties informed the district court that they were engaged in settlement negotiations. The trial date was postponed and the parties conducted negotiations for over four months. On December 2, 1998, two settlement agreements signed by the appropriate parties were filed with the district court: the City Settlement Agreement and the State Settlement Agreement.
 
 
 11
 The City Settlement Agreement establishes an Advisory Panel of four experts in the child welfare field selected and approved by plaintiffs and the City defendants. The Advisory Panel is to study various areas of ACS' operations, including permanency, placement and evaluation, and monitoring of private agencies, with the full cooperation of ACS, which agrees to provide the Panel with full access to information, documents, and personnel. The Advisory Panel is required to report on each of the enumerated areas and to determine whether ACS is making good faith efforts toward reform in those areas; if the Panel finds a lack of good faith, plaintiffs can seek judicial relief, using the Panel's findings as prima facie evidence that ACS is not acting in good faith. Notably, the City Agreement also contains limitations on the filing of class action lawsuits through December 15, 2000, the date the Agreement expires.
 
 
 12
 The State Settlement Agreement establishes a regional office of the New York State Office of Children and Family Services ("OCFS") in New York City to monitor and supervise child welfare services within the City, and provides for improvements to the State Central Register, the child abuse and neglect hotline. OCFS is also required to file fatality reports and undertake one or more case record reviews of ACS records in various areas, such as child protective services and cases of children in placement, to determine if ACS is complying with applicable laws and reasonable case work practice. The State Settlement Agreement also contains limitations on filing class action suits until December 31, 2000, the date the Agreement expires.
 
 II. The Joel A. Objectors
 
 13
 On January 15, 1999, on the eve of the hearing to determine the fairness of the settlement and on the last day upon which interested parties could file objections to the settlement, the Joel A. objectors filed a separate class action suit against New York City and State officials who are also defendants in Marisol. Joel A. v. Giuliani, No. 99 Civ. 0326 (RJW). Each of the objectors is a gay child in the custody and care of ACS, within the third subclass of the Marisol class. They are alleged victims of bias-related violence, harassment and discrimination at the hands of their heterosexual peers in the foster care system and by the City and State officials responsible for overseeing the child welfare system. They bring claims under a variety of federal and state constitutional and statutory provisions and seek "concrete relief for bias-related victimization by their peers, and systemic discrimination based on sexual orientation, both of which result in physical, emotional, psychological, and developmental injuries." The Joel A. objectors asserted in the district court and claim here that they could not be adequately represented within the Marisol subclass three, since the class consists of the very peers who have been victimizing them, and that the district court took insufficient steps to ensure that they were adequately represented in settlement discussions. The objectors allege that the Settlement Agreements impose unduly broad restrictions on their right of access to the courts, in violation of Rule 23(e) and the Due Process Clause of the United States Constitution. They further allege that the concessions made to the Marisol defendants were granted in exchange for illusory relief of practically no value to class members.
 
 III. The District Court Opinion
 
 14
 After a fairness hearing on January 22, 1999, at which the Joel A. objectors interposed objections, the district court issued a written opinion. Marisol A. ex rel. Forbes v. Giuliani, 185 F.R.D. 152 (S.D.N.Y. 1999) ("Marisol V"). The district court discussed at length the factors that a district court should consider in evaluating whether a class action settlement is fair, reasonable and adequate. See id. at 162. These so-called Grinnell factors include: "(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, [and] (6) the risks of maintaining the class action through the trial." Robertson v. National Basketball Ass'n, 556 F.2d 682, 684 n.1 (2d Cir. 1977) (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974)).
 
 
 15
 The district court found that the Grinnell factors either weighed in favor of the settlement or were irrelevant. In particular, the court noted that (1) the pending action presented many unsettled and complex legal issues, and a trial would take five months or more and be "extremely costly"; (2) only three objections were raised out of a class of 100,000; (3) trial preparation had been extensive, so that counsel was thoroughly familiar with the strengths and weaknesses of their respective cases; (4) the agreements were more favorable to the plaintiff class than any relief the district court could have unilaterally ordered after a trial resulting in a plaintiffs' verdict, and no preferable alternative remedy had been suggested; (5) it was unlikely that the class or subclasses would be decertified; and (6) the settlement was negotiated at arms length by experienced counsel. Marisol V, 185 F.R.D. at 162-65.
 
 
 16
 The court rejected the argument that the relief provided by the settlements was illusory, and found that the covenants not to sue and releases were not unfair or oppressive as they only precluded class equitable claims for two years, and allowed individual plaintiffs to sue for relief tailored to their specific concerns at any time. The court concluded that "a moratorium on class action equitable suits for two years, while plaintiffs and defendants work together to develop a better child welfare system, is fair, reasonable, and adequate." Id. at 170. In addition, the court held that the Joel A. objectors' claim of inadequate representation, on the basis that no Marisol named plaintiff had standing to raise claims of discrimination specific to the Joel A. class, had already been decided and affirmed on appeal. See id. The district court concluded that the settlements were fair, reasonable and adequate, and approved them. This appeal followed.
 
 DISCUSSION
 
 17
 Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that effects the dismissal of a class action. Before such a settlement may be approved, the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion. See, e.g., Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1079 (2d Cir. 1995); Grant v. Bethlehem Steel Corp., 823 F.2d 20, 22 (2d Cir. 1987).
 
 
 18
 We review a district court's decision to approve a proposed settlement of a class action for abuse of discretion. See In re Ivan F. Boesky Secs. Litig., 948 F.2d 1358, 1368 (2d Cir. 1991). The trial judge's views are accorded "great weight . . . because he is exposed to the litigants, and their strategies, positions and proofs. . . . Simply stated, he is on the firing line and can evaluate the action accordingly." Grinnell, 495 F.2d at 454 (internal quotation marks omitted). The considerable deference accorded to the judgment of the district court is heightened where the trial judge's experience has imparted to the judge a particularly high degree of knowledge. See, e.g., Twelve John Does v. District of Columbia, 117 F.3d 571, 576 (D.C. Cir. 1997) (finding that "the district court's experience overseeing the case for nearly two decades" had given it "a unique familiarity with the issues and the performance of class counsel"). The Marisol case is related to two child welfare institutional reform cases, Jesse E. v. New York City Dep't of Soc. Servs., No. 90 Civ. 7274 (RJW), and Wilder v. Bernstein, No. 78 Civ. 957 (RJW), over which Judge Ward presided for nearly ten and twenty years, respectively. Judge Ward's two decades of experience in matters regarding New York City's child welfare system make him uniquely qualified to determine the reasonableness of the settlement achieved.
 
 
 19
 On appeal, the Joel A. objectors argue that (1) there is no evidence in the record of any structural precautions implemented to assure adequate representation of the interests of the three subclasses during settlement negotiations, (2) the covenants not to sue and releases contained in the agreements are given in exchange for illusory consideration, and (3) the covenants not to sue and releases are overbroad and oppressive, and violate the due process rights of absent class members. We consider each argument in turn.
 
 
 20
 I. Adequate Representation of Subclasses During Settlement Negotiations
 
 
 21
 Appellants contend that, although the district court created subclasses, it failed to ensure that the different interests of each subclass were adequately represented during settlement negotiations, and failed to implement structural precautions toward that end. We reject these contentions.
 
 
 22
 Relying on Amchem Products, Inc. v. Windsor, 521 U.S. 591, 627 (1997), appellants insist that the district court abused its discretion when it approved the settlements without complying with what appellants characterize as a requirement of "structural assurance of fair and adequate representation" of the subclasses. Amchem is inapposite to this case.
 
 
 23
 In Amchem, plaintiffs, exposed to the asbestos of one manufacturer, instituted a class action for a single class after a settlement had been agreed to in principle. The parties moved jointly for conditional class certification and approval of a settlement agreement. See id. at 601-02. The district court granted the motion without any litigation. See id. at 605-06. The Supreme Court held that, in those circumstances, there should be a higher level of scrutiny of whether Rule 23's requirements were met, because "a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Id. at 620. In this case, by contrast, the class was certified and the case intensively litigated for more than two years before settlement negotiations began.
 
 
 24
 Moreover, the Amchem class presented an obvious conflict between those currently injured and those who had yet to suffer injury, but would in the future. See id. at 626. No such obvious conflict is present in this case. In fact, when we approved the certification of the class in Marisol II, we specifically rejected defendants' contention that the interests of part of the class, children in the system's custody, were opposed to the interests of those children who were not in custody. We observed that with respect to the broad relief sought - dramatic improvement in the quality of all child welfare services - "the interests of the class members are identical." Marisol II, 126 F.3d at 378. Without the sort of conflicting goals among the subclasses that would require separate representation, we find nothing in Amchem that requires a district court to make specific findings, when approving a settlement, that each subclass received adequate representation.
 
 
 25
 To the extent the Joel A. objectors are now contending that their representation by Marisol subclass three, of which they concede they are a part, was inadequate, that argument is untimely. Whatever perceived differences they had with the other subclass members were apparent when the subclasses were certified, just as it was clear that they were to be represented for all purposes, including settlement purposes, by the Marisol subclass three plaintiffs. If the Joel A. objectors wished to dispute the adequacy of the representation of their subclass, they should have done so when the subclasses were certified. To the extent that appellants' argument is a belated objection to class certification on the basis of adequacy of representation, the argument is waived.
 
 
 26
 We therefore decline to find that the district court inadequately responded to our earlier concern that the original certified class "stretche[d] the notions of commonality and typicality," id. at 377, when it certified the three subclasses, one of which included the Joel A. objectors.
 
 
 27
 II. The Relief Obtained for the Marisol Class Members
 
 
 28
 Appellants contend that the relief obtained in exchange for the release of claims was "illusory" because the City is only required to provide information to the Advisory Panel, which, in turn, "is not required, in any enforceable sense, to do anything with the information it receives" and has no authority to compel the defendants to act. Appellants assert that the district court should have "(1)identified the legal rights being violated by the City defendants, (2) ordered the City defendants to devise a program to cure these violations, (3) made such modifications to the plan as the Court deemed necessary . . . and (4) ordered compliance with the plan as modified." Appellants also claim, without much elaboration, that the State Settlement "fails to provide any direct, concrete, or reasonably certain relief" to class members. There is no merit to these arguments.
 
 
 29
 The district court explicitly found none of the relief provided for by the settlement agreements to be illusory. See Marisol V, 185 F.R.D. at 168-70. Judge Ward observed that "the City Settlement Agreement provides for a panel of nationally respected and renowned child welfare experts to comprehensively evaluate the operations of ACS," and that the Panel "has been given full access to information, documents, and personnel of ACS." Id. at 169. In response to the objectors' concerns about a lack of definitive dates for the Panel to issue its reports, the district court found that the Panel "has a time frame during which to complete its tasks . . . . Given the expertise of the Advisory Panel, the Court is not concerned that specific dates for the Reports are not included." Id. The district court further found that the State Settlement Agreement provided for "specific actions to be taken by the State, including establishing NYCRO and monitoring functions which benefit children in the care and custody of ACS." Id.
 
 
 30
 Finally, in discussing remedies, the district court observed that the City had been working to reform its child welfare system and had achieved certain improvements. It noted that although plaintiffs might have been able to establish liability at trial, "the Court may not have been in a position to provide for more relief than simply encouraging continued effort and improvement by ACS." Id. at 164. The district court concluded that:
 
 
 31
 With the beneficial terms of the Agreements and safeguards in place should the City or State fail to comply, the Court believes that these voluntary Settlement Agreements are more favorable than any remedy that could have been imposed by the Court at the end of a trial.
 
 
 32
 Id. at 165.
 
 
 33
 The district court did not abuse its discretion in finding that the Agreements provided tangible and valuable relief to class members, including the Joel A. objectors. While there are no guarantees that all class members will be satisfied by the reform that results from the Settlement Agreements, there is no evidence at this point that the Advisory Panel is ineffective or has not received the cooperation of the City and State defendants, nor is there any indication that any alleged weaknesses in the settlement terms would have a more adverse impact on the Joel A. objectors than on the entire class. Whether litigation will have to be resumed after the two-year hiatus imposed by the settlement agreements remains to be seen; in the meantime, appellants have not convinced us that Judge Ward, with his substantial expertise in overseeing litigation affecting the City's child welfare system, acted unwisely, much less abused his discretion, when he approved the Settlement Agreements as a fair exchange between the parties.
 
 III. Covenants Not to Sue and Releases
 
 34
 Appellants argue that the covenants not to sue and the releases contained in the settlement agreements are overbroad and violate the due process rights of absent class members. They claim that (1) the restriction on their rights to seek relief for injuries during the duration of the agreements is impermissible, (2) the covenants and releases improperly restrict the rights of certain class members to pursue legal claims that the class representatives lacked standing to bring, and (3) the provisions that allow actions by individuals are inadequate. We do not think that, on the facts of this case, these concerns warrant invalidation of the settlement.
 
 
 35
 A. Restrictions on the Right to Seek Systemic Injunctive Relief
 
 
 36
 Paragraph 48 of the City Settlement Agreement provides:
 
 
 37
 Effective upon the expiration of the term of this Agreement on December 15, 2000, Plaintiffs . . . hereby jointly and severally release and forever discharge, on the merits and with prejudice, the City . . . of and from any and all manner of equitable claims, actions, costs, expenses and attorneys' and expert fees . . . whether known or unknown, foreseen or unforeseen, matured or unmatured, accrued or not accrued, direct or indirect, that the named Plaintiffs and the members of the class, and each of them, ever had, has or have on December 15, 2000, or can, shall or may thereafter have against the releasees . . . for, by reason of, involving, concerning, arising from or in any way relating to any equitable claim which is or could have been stated against the releasees in the Marisol Litigation . . . and which claim is based on facts, events, actions or omissions by the City or any releasee which took place from the date of Court approval of this Agreement to December 15, 2000, other than a claim by an individual plaintiff for equitable relief tailored solely to the specific circumstances of that individual plaintiff.
 
 
 38
 Paragraph 41 of the State Settlement Agreement also provides:
 
 
 39
 All class-wide or systemic claims arising from new facts and/or circumstances that occur during the duration of this Agreement and which relate in any way to any claim raised in the Pre-Trial Order are resolved by this Agreement, except that this Agreement shall not preclude any individual class member from filing an action on their own behalf . . . .
 
 
 40
 We reject appellants' argument that these releases and covenants not to sue deny them due process. When viewed in the context of the entire settlement, the release is extremely limited in scope. Designed to "permit[] the parties and the Advisory Panel to focus upon and achieve the objectives of th[e] Agreement," City Agreement ¶ 42(a), the sole effect of the release is to prohibit, until December 16, 2000, class action suits asserting equitable claims that are related to the claims asserted by the Marisol class and seek systemic relief. The release explicitly preserves the right of "an individual plaintiff [to sue] for damages or equitable relief tailored solely to the specific circumstances of that individual plaintiff." Moreover, after December 15, not only are all plaintiffs - including, of course, the Joel A. plaintiffs - free to pursue a class action for systemic relief of any outstanding violations, but in support of such an action they may rely upon evidence pre-dating December 15. As the Joel A. plaintiffs seek only prospective rather than remedial relief, the practical effect of the limited release is the same as if the settlement had merely stayed the Joel A. action for a reasonably brief period in order to allow an attempt to achieve an administrative solution that would moot the Joel A. and Marisol claims.
 
 
 41
 In substance, then, the Joel A. class members are not being barred from the courthouse door; they are simply being told that, with respect to claims in equity they may have that relate to the claims raised in the Pre-Trial Order in the Marisol litigation, they have to come one at a time - and seek no system-wide relief - before December 16, 2000, whereupon they may return as a class, if need be, to remediate ongoing systemic deficiencies. The limited release effectively delays the Marisol and Joel A. suits until December 16, 2000, at which point defendants will have had a reasonable opportunity to effect the desired reforms. Thereafter, plaintiffs are free to re-initiate their actions and to request relief identical to what they seek in this suit. Moreover, if plaintiffs choose to re-file after December 15, discovery will be greatly facilitated because much, if not all, of the relevant documentation will have been collected and turned over to the Advisory Panel. Viewing the settlement as a whole, then, we conclude that the limited release and covenants not to sue at issue here do not contravene public policy or materially deprive the Joel A. plaintiffs of their claims. Accordingly, we find that the Joel A. plaintiffs have not been denied due process in this regard.
 
 B. Standing to Assert Joel A. Claims
 
 42
 Appellants' second argument is that the Marisol plaintiffs had no authority to settle claims belonging to the Joel A.class, which they lacked standing to assert. Specifically, appellants claim that the Marisol plaintiffs had no stake in claims concerning bias-related violence, abuse and harassment or systemic discrimination based on sexual orientation. But the remedy anticipated by both Settlement Agreements, while broader than the particular relief sought by the Joel A. class, is likely to deal with these complaints, as they are a subset of a larger claim of systemic inadequacies. While the claims related to bias and discrimination on the basis of sexual orientation are not shared by all of Marisol subclass three, our precedents do not dictate that the settlement be invalidated because these claims are subsumed within a more generalized claim.
 
 
 43
 Plaintiffs cite National Super Spuds, Inc. v. New York Mercantile Exchange, 660 F.2d 9, 16 (2d Cir. 1981), for the proposition that class representatives cannot bargain away rights belonging to class members in which they have no stake. We do not find Super Spuds to be controlling on the facts presented here. In Super Spuds, plaintiffs brought a class action on behalf of all persons who liquidated long positions in Maine potato futures contracts between April 13 and May 7, 1976, during which time prices had been depressed by defendants' wrongful conduct. See id. at 11. The proposed settlement agreement in Super Spuds not only barred class members from bringing claims based on the liquidated contracts, but also barred all other claims by class members against the defendants, including claims based on contracts unliquidated at the close of trading on May 7. See id. at 14. In return, class members were to receive damages calculated solely on the contracts liquidated during the class period. See id. Richards, a class member who held contracts liquidated during the class period as well as contracts only liquidated after May 7, objected. We held that there was "no justification for requiring Richards or persons similarly situated to release claims based on unliquidated contracts as part of a settlement in which payments to class members are to be determined solely on the basis of the contracts they liquidated." Id. at 18.
 
 
 44
 Two primary characteristics distinguish Super Spuds from the present action: (1) a finite settlement fund that was to be allocated among class members, and (2) claims of certain class members (unliquidated contracts as of May 7) that were valued at zero in order to provide a higher payment to claims of other class members (contracts liquidated between April 13 and May 7). In that case it was clear that the settlement provided absolutely no benefit to class members who held unliquidated contracts as of May 7. There is no such clear divide between the members of Marisol subclass three and the Joel A. objectors. This is not a case presenting "the danger that a class representative not sharing common interests with other class members would 'endeavor[] to obtain a better settlement by sacrificing the claims of others at no cost to themselves.'" TBK Partners, Ltd. v. Western Union Corp., 675 F.2d 456, 462 (2d Cir. 1982) (quoting Super Spuds, 660 F.2d at 19 n.10). In view of the important system-wide attempt to reform New York City's foster care system, it cannot be said that the settlement provides no benefit to the Joel A. class members, as they are in need of the same improved services, better training and closer monitoring as the other foster children. We find it therefore inaccurate to claim that the settlement was paid for with the "uncompensated sacrifice" of the Joel A. claims. Super Spuds, 660 F.2d at 19.
 
 
 45
 Furthermore, in light of the limited scope of the release in this matter, the Joel A. plaintiffs' reliance on our decisions in TBK Partners and Super Spuds is misplaced. In those cases, class plaintiffs objected to far broader, permanent releases of all their claims. As explained supra at 142, under the settlement in the instant matter, plaintiffs need only forego class actions seeking systemic relief, and then only for a relatively brief time. In these circumstances, it is immaterial whether the Joel A. claims "rest[] on the same factual predicate as" the Marisol claims. TBK Partners, 675 F.2d at 462.
 
 
 46
 Finally, to the extent that appellants now claim that the Marisol plaintiffs had no right to restrict the Joel A. objectors' ability to press claims that no class representative could have brought, we reject the argument as an untimely attack on the adequacy of the plaintiff subclasses. This claim was waived long ago; as we have explained supra at 136-37, appellants had ample opportunity to challenge the subclasses fashioned by the district court, but failed to do so.
 
 C. Individual Rights of Action
 
 47
 Finally, appellants argue that the provisions allowing individual plaintiffs to bring actions for damages or injunctive relief are inadequate because they lack the resources to retain counsel and prosecute complex actions. We do not accept the objectors' assertion that they cannot achieve the relief they seek by bringing individual actions where necessary, and by waiting to benefit from systemic reform. These provisions afford an individual recourse to the courts if his or her circumstances demand it, and apply equally to all foster children. Appellants have put forth no reason why this bargained-for exchange was any less adequate for Joel A. class members than for any other foster children.
 
 CONCLUSION
 
 48
 The City Settlement Agreement and State Settlement Agreement were negotiated by experienced public interest counsel and are the product of several years of discovery and months of negotiation. Together, they attempt to find the beginnings of a solution to the persistent inadequacies of New York City's foster care system alleged in plaintiffs' complaint. The City and State defendants recognize that reforms are necessary, and have exhibited a willingness to achieve them. It is possible that they may fall somewhat short of their stated goals of transparency and cooperation; however, a settlement agreement achieved through good-faith, non-collusive negotiation does not have to be perfect, just reasonable, adequate and fair. The Agreements were reviewed in detail by a district judge steeped in child welfare litigation and possessed of great experience in such matters. He found that the covenants and releases, which effectively create a moratorium on class action equitable suits for two years while the parties attempt to reform the child welfare system, are not oppressive, and represent a fair compromise when balanced against the gains to the class members from systemic reform facilitated by the Agreements. We agree.
 
 
 49
 The district court acted within its discretion when it approved the City and State Settlement Agreements. The decision of the district court is affirmed.