BULSARA, United States Magistrate Judge:
On October 18, 2017, Plaintiff Kirk Douglas ("Douglas") brought this action, on behalf of himself and others similarly situated, against Allied Universal Security Services, Allied Barton Security Services LLC, and Allied Security Holdings LLC (collectively, "Allied") alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for failure to pay minimum and overtime wages. (Compl., Dkt. No. 1). On November 30, 2018, Douglas filed an unopposed motion *81 for class and collective certification and preliminary approval of a settlement agreement reached with Allied. (See Mot. to Certify, Dkt. No. 33 ("Mot.") at 1-2).[1]
The proposed settlement is a hybrid class and collective action resolution. A FLSA collective would cover employees who worked for Allied at JFK Airport between October 18, 2014 and the present, while a NYLL class would cover employees who worked there between September 1, 2013 and the present. (Id. ; see also Notice of Proposed Class and Collective Action Lawsuit, attached as Ex. 1 to Letter dated Feb. 18, 2019 ("Suppl. Letter"), Dkt. No. 41 ("Class Notice") at 4). The settlement proceeds along the following sequence. After preliminary approval of the settlement by the Court, notice would be mailed to all potential collective and class members. Class members-i.e. those who have NYLL claims-are automatically included in the class unless they affirmatively opt out within 60 days of the mailing of the class notice. (Proposed Schedule for Settlement Approval, attached as Ex. A to Mot., Dkt. No. 33 ("Proposed Schedule") ). The Court would then hold a final approval hearing. If the settlement is approved, checks would be sent to class members and potential collective members. Those employees who cash their settlement checks would be deemed to have opted into the FLSA collective and to have released their FLSA claims.[2] (Class Notice at 2; Settlement Agreement, attached as Ex. 1 to Aff. of Christopher Q. Davis, Dkt. No. 34 ("Settlement Agreement") ¶ 2.3).[3]
The parties have proceeded as if this is a typical class action settlement. It is not. The proposed settlement ignores the special complexities attendant to approval of a settlement of FLSA claims in this Circuit-complexities resulting from the Second Circuit's decision in Cheeks v. Freeport Pancake House, Inc. , 796 F.3d 199 (2d Cir. 2015). The Court first alerted the parties to these issues by Order dated December 20, 2018, after the parties had submitted a motion seeking preliminary approval of the settlement, but failed to cite, let alone address, Cheeks . (Order dated Dec. 20, 2018, Dkt. No. 38 ("Clarification Order"); see generally Mem. in Support of Mot., Dkt. No. 35 ("Pl.'s Mem.") ). In response, Plaintiff's counsel submitted a summary letter that said Cheeks had been addressed in their prior submission, albeit implicitly. (Letter dated Jan. 15, 2019, Dkt. No. 39). The letter did not address attorney's fees, among other things. (See id. ). The Court then held a hearing on February 4, 2019 in which it addressed problems with these proposals and directed parties to revise their submissions to provide, among other things, authority regarding the interaction between a FLSA collective and NYLL class and whether the cashing of a settlement check is an appropriate opt-in procedure for a FLSA collective. (See Minute Entry dated Feb. 4, 2019; Tr. of Mot. to Certify Hr'g on Feb. 4, 2019, Dkt. No. 43 ("Feb. 4 Tr.") at 6:1-5). On February 18, *82 2019, parties jointly filed a letter providing the Court with additional briefing on the topics discussed at the hearing and a revised settlement notice for Court approval. (See Suppl. Letter; Class Notice). The additional submissions have not resolved the various issues that are present in the agreement, and as a result, the Court cannot approve the proposed settlement.
Rule 23(e) by its terms requires that a class action settlement be "fair, reasonable, and adequate." At the preliminary approval stage of the case, "the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." Joel A. v. Giuliani , 218 F.3d 132, 138 (2d Cir. 2000) ; see Fed. R. Civ. P. 23(e)(2). Under Cheeks , parties cannot privately settle FLSA claims with prejudice absent the approval of the district court and must "satisfy the Court that their agreement is fair and reasonable." Cortes v. New Creators, Inc. , No. 15-CV-5680, 2016 WL 3455383, at *2 (S.D.N.Y. June 20, 2016) (quotations omitted) (citing Cheeks , 796 F.3d at 200 ).
In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.
Wolinsky v. Scholastic Inc. , 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012) (quotations omitted). "Making this determination is ... an information intensive undertaking, and the Parties must provide the Court with enough information to evaluate the bona fides of the dispute." Aguirre v. Torino Pizza, Inc. , No. 18-CV-2004, 2019 WL 126059, at *2 (S.D.N.Y. Jan. 8, 2019) (quotations and citations omitted) (alterations omitted).
Cheeks and Wolinsky are integral components of the Rule 23(e) preliminary class approval in this case. For one thing, the proposed settlement results in a dismissal, with prejudice, of FLSA claims. (Settlement Agreement ¶ 3.7(c) ("Any Class Member who endorses and cashes a Settlement Check will ... have any FLSA Claims released and dismissed.") ). That requires Court approval. See Cheeks , 796 F.3d at 206. For another, the meaning of the term "fair and reasonable"-the inquiry the Court must undertake under Rule 23(e) -is determined by the particular kind of class action being settled. This is a FLSA case, and whether the settlement is fair and reasonable under Rule 23(e) is determined by Cheeks and Wolinsky . See, e.g., Xiao Ling Chen v. XpresSpa at Terminal 4 JFK LLC , No. 15-CV-1347, 2018 WL 1633027, at *5-6 (E.D.N.Y. Mar. 30, 2018) (determining whether Cheeks was satisfied at preliminary approval stage); Sanders v. CJS Sols. Grp., LLC , No. 17-CV-3809, 2018 WL 620492, at *3-4 (S.D.N.Y. Jan. 29, 2018) (analyzing Cheeks in context of preliminary class action approval); Riedel v. Acqua Ancien Bath N.Y. LLC , 2016 WL 3144375, at *6-7, 2016 U.S. Dist. LEXIS 68747, at *20-22 (S.D.N.Y. May 19, 2016) (recognizing Cheeks and Wolinsky in context of preliminary class action approval).
That the parties have proposed a FLSA collective action settlement and NYLL class action does not mean that Cheeks review can be avoided at this stage. Under the proposed settlement, the NYLL class *83 members are employees who worked for Defendants from September 1, 2013 to the present, and the FLSA collective members are those employees who worked from October 18, 2014 to the present. Unless a NYLL class member opts-out, they will receive a single check for their unpaid wages that compensates them for both their NYLL and FLSA claims. For employees who worked from October 18, 2014 to the present, they cannot resolve their NYLL claims without simultaneously resolving their FLSA claims because the check is payment for both. (Settlement Agreement ¶ 5.3 ("Each [NYLL] Claimant forever and fully releases Defendants from all New York State Law claims during the Class Period. Each Claimant that presents their settlement check for payment forever and fully releases the Defendants from all FLSA claims during the Class Period.") ).[4] There is no method available to resolve FLSA claims alone; indeed as the notice indicates, all collective members are members of the NYLL class. (See Class Notice at 4). In other words, the NYLL class action operates as de facto FLSA class action for employees who worked from October 18, 2014 to the present. Where the class action is labeled as a NYLL class, yet operates as a FLSA class action, or even when FLSA claims are part of a collective action, it is appropriate to analyze the fairness of the settlement under Cheeks at the preliminary approval stage. That is the only method to give meaning in this case to Rule 23(e)'s requirement that preliminary evaluation of settlement consider whether the agreement is fair.
The parties have failed to provide the Court sufficient information to conduct a Cheeks review of the proposed settlement. The Court lacks basic information on the potential range of recovery for any employees. The Court has twice asked for information necessary for Cheeks approval-once before and once during the hearing held on February 4, 2019. (See Clarification Order; Feb. 4 Tr. at 10:1-19). All that has ever been provided is a summary statement of the gross settlement amount and a basic breakdown of attorney's fees, costs, service awards, and employer-side taxes. In its most recent submission, Plaintiff indicates that the $ 2,529,000 gross settlement reached in this case reflects "a risk-reduced percentage of the class members' maximum probable underpayment damages of ... approximately $ 3,228,000." (Suppl. Letter at 3). The definitions of "risk-reduced" and "probable underpayment" are never explained.
To indicate the range of recovery, a plaintiff must at least indicate "each party's estimate of the number of hours worked or the applicable wage." Lopez v. Nights of Cabiria, LLC , 96 F.Supp.3d 170, 176 (S.D.N.Y. 2015) ; e.g., Mamani v. Licetti , No. 13-CV-7002, 2014 WL 2971050, at *2 (S.D.N.Y. July 2, 2014) ("[A]lthough the parties dispute the amount that Plaintiff is owed (or whether Plaintiff is owed anything at all), the parties do not provide the Court with each party's estimate of the number of hours worked or the applicable wage. Accordingly, the Court cannot approve the Settlement Agreement at this time."). There are various methods to proffer such facts: by indicating what was alleged in the Complaint or the evidence shown through discovery, among others.
*84 See Russell v. Broder & Orland, LLC , No. 17-CV-1237, 2018 WL 3104101, at *5 (D. Conn. June 22, 2018) (using defendants' motion, which quoted plaintiff's complaint, in evaluating plaintiff's actual recovery compared to potential recovery); Bao Cheng Fu v. Mee May Corp. , No. 15-CV-4549, 2017 WL 4685112, at *2-3 (S.D.N.Y. Oct. 18, 2017) (using plaintiffs' declarations to compare potential recovery with actual recovery).
What the parties have provided here is inadequate. The Court lacks information on the potential or actual wage rate, the hours worked, or the number of members of the collective. See, e.g., Fishwick v. RMJM, Inc. , No. 14-CV-904, 2015 WL 13649463, at *3 (S.D.N.Y. June 12, 2015) ("[T]he parties have failed to provide the Court with the grounds for the estimate of Plaintiffs' alleged out-of-pocket wages.... There are no supporting declarations or exhibits substantiating th[eir] statement. Nor is there an estimate of the number of hours worked or the applicable wage demonstrating how Plaintiffs calculated such a figure. Without further information about Plaintiffs' maximum possible recovery, the Court cannot discharge its duty to determine whether the settlement amount is fair and reasonable as to each Plaintiff.") (quotations and citations omitted). The expert summary charts appended to the most recent submission are of little assistance. (See Estimate of Non-Supervisor Damages, attached as Ex. 2 to Suppl. Letter, Dkt. No. 41; Supervisor Damages, attached as Ex. 3 to Suppl. Letter, Dkt. No. 41). While the assumptions used by the experts and/or plaintiff's counsel have been identified, no explanation is provided as to why such assumptions or methodology is an appropriate means of measuring an employee's potential damages.
Using specific employees as exemplars could provide the information to the Court if the collective is too numerous. But such an approach has not been utilized, and the Court therefore cannot conduct even a preliminary Cheeks review. E.g., Xiao Ling Chen , 2018 WL 1633027, at *3 ("The parties have not provided the Court with any information that would allow the Court to compare the amount of money any particular individual would receive under the Settlement Agreement with the amount that individual would receive if the case were to proceed to trial and the individual were to be awarded full recovery."); Sanders , 2018 WL 620492, at *4 ("Plaintiffs argue that the Settlement Agreement is fair because the Gross Settlement Amount represents almost 100% of unliquidated damages that would be owed if Plaintiffs prevailed on all of their claims. But the parties do not explain what the range of possible recovery for any Plaintiff is[.]") (quotations and citation omitted).
Other components of the Cheeks review cannot be completed-namely an evaluation of the litigation risks and the reasonableness of attorney's fees and costs.
As to litigation risks, Plaintiff submits a conclusory statement that "Allied has presented significant, and potentially dispositive arguments, that pose a significant risk to the[ ] chances for class-wide recovery." (Pl.'s Mem. at 17). This is not expanded upon. The only proffer is that Allied disputes whether certain employees were required to work off-the-clock and that Plaintiff would have to prove at trial that Allied had actual or constructive knowledge of such work. (Id. ). This is insufficient information from which the Court can determine that collective members would face serious risks if they proceed to trial.
As to attorney's fees, Plaintiff requests an award of $ 740,000 but provides no information for the basis of this request. While a court can award attorney's *85 fees based on either the lodestar calculation-the hourly rate times the number of hours worked-or a percentage of the settlement award, "[c]ounsel must provide a factual basis for a fee award, typically with contemporaneous time records." Guareno v. Vincent Perito, Inc. , No. 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ; see Arango v. Scotts Co., LLC , No. 17-CV-7174, 2019 WL 117466, at *5 (S.D.N.Y. Jan. 7, 2019) ("Even where attorneys' fees are sought pursuant to the percentage of the fund method, 'counsel must submit evidence providing a factual basis for the award.' ") (quoting Wolinsky , 900 F.Supp.2d at 336 ). At this stage, the final fee award is not being determined; nonetheless there must be some factual support for the fee award. That is because Cheeks and Wolinsky contemplate using attorney's fees as an insight into the fairness of the settlement. A fee that is so disproportionate to a plaintiff's recovery raises questions of whether counsel has taken monies that should be awarded to the employee. While an agreement setting fees at or less than 33% of the net settlement amount suggests such overreach is not present, that is not universally the case. That possibility is excluded by conducting a lodestar check, but Plaintiffs have not provided the Court with a lodestar calculation. See Tapia v. Mount Kisco Bagel Co. , No. 18-CV-2864, 2018 WL 4931542, at *4 (S.D.N.Y. Oct. 5, 2018) ("Based on the evidence before it, ... the Court is unable to say whether the requested 30.26% contingency fee is reasonable in this particular case because Plaintiff[']s counsel have not provided the Court with affidavits attesting to their hourly rate or contemporaneous time records indicating the actual amount of hours worked."); Bhardwhaj v. Alan's Farmland Ltd. , No. 16-CV-7880, 2018 WL 1891313, at *2 (S.D.N.Y. Apr. 5, 2018) ("[C]ourts in this Circuit use the lodestar as a 'cross check' to determine the reasonableness of attorney's fees. However, here Plaintiff's counsel has not provided any records of the hours spent working on the case or the rates at which they bill. As a result, the Court has insufficient information with which to assess the reasonableness of the request for attorney's fees[.]") (citing Wal-Mart Stores, Inc. v. Visa U.S.A., Inc. , 396 F.3d 96, 123 (2d Cir. 2005) ).
A similar problem exists pertaining to the $ 70,000 costs request because Plaintiff provides no explanation, breakdown, or documentation. Again, while no final costs calculation need be submitted, the significantly large quantum of the costs requires some breakdown.
Putting aside the Cheeks issues, there are structural problems with the settlement that make it impossible to approve.
First, FLSA does not allow the cashing of a settlement check to serve as an employee's consent to become a collective member; after consenting in writing, the written consent must be filed on the docket. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); Lynch v. United Servs. Auto. Ass'n , 491 F.Supp.2d 357, 367 (S.D.N.Y. 2007) (noting that one of the "essential features" of a FLSA collective action under 29 U.S.C. § 216 is that, "in order to participate in a collective action, an employee must 'opt-in,' meaning the employee must consent in writing to join the suit and that consent must be filed with the court"); see also Sandoz v. Cingular Wireless LLC , 553 F.3d 913, 915 (5th Cir. 2008) ("FLSA allows an employee to bring a claim on behalf of other similarly-situated employees, but the other employees do not become plaintiffs in the action unless and *86 until they consent in writing."). While the proposed settlement contains opt-in language on the back of every check, which would be signed by any employee cashing it, there is no mechanism in the agreement for filing such consent with the Court. That renders the proposed collective action settlement incompatible with § 216(b). See Kempen v. Matheson Tri-Gas, Inc. , No. 15-CV-660, 2016 WL 4073336, at *9 (N.D. Cal. Aug. 1, 2016) ("In this case, FLSA putative class members are not properly directed to give their consent in writing and have it filed with the Court in order to join the class. The parties provide no support for their assertion that having class members sign, then cash, checks with purported opt-in language printed on the back complies with the plain-language requirements of § 216(b).") (citation omitted).
Second, there is a more fundamental problem. The structure of the collective action provision of FLSA-including the requirement that the opt-ins be filed-is to ensure the presence of plaintiffs before the court. Unlike in a class action, where the rights of unnamed parties are adjudicated in their absence (or via representative), the opposite is true in a collective action. Their presence takes on particular importance in light of Cheeks which requires the court to evaluate the fairness of the settlement, as this occasionally requires direct questioning of the party or submission of evidence via affidavit or declaration. See, e.g., Hall v. Zoder's Court, Inc. , No. 16-CV-159, 2016 WL 6496244, at *2 (E.D. Tenn. Nov. 2, 2016) (considering plaintiff's testimony from a fairness hearing in approving a FLSA settlement agreement); Felton v. Blade Buster, LLC , No. 10-CV-947, 2011 WL 2746832, at *1 (M.D. Fla. June 17, 2011) (noting that the court "accepted statements from Plaintiff" in a FLSA settlement agreement hearing), report and recommendation adopted , 2011 WL 2746226 (July 14, 2011).
This Settlement Agreement has the process entirely backwards; it has the Court conduct final Cheeks review before any member of the collective has opted in. It is only while simultaneously cashing his check that an employee becomes a member of the collective. (See Settlement Agreement ¶ 2.3). The settlement checks are not even issued until thirty days after the "final effective date" of the settlement agreement, which is after the Court's final approval hearing. (See id. ¶¶ 2.13, 4.4). Yet the agreement provides that the Court's final approval order-issued before that-would release Allied from all potential claims against it. (See id. ¶ 3.9 (providing that the parties will request the Court to, at the final fairness hearing, "order the dismissal with prejudice of ... all FLSA Claims of Class Members who endorse and cash a Settlement Check"); id. ¶ 5.4 (providing that, by operation of the Court's final order, "each Claimant forever and fully releases Defendants" from FLSA claims) ).[5]
The proffered structure has the Court opining on the fairness of a settlement-that is not a class action-of employees who are not before the Court and dismissing their claims with prejudice before they ever appear. If the Court did so, "then recipients of the settlement checks would have no litigation to opt in to.... The procedure set forth in the Agreement-namely that an individual opts in and simultaneously settles his or her FLSA claim by depositing a check-simply makes no sense in the context of Cheeks ." Xiao Ling Chen , 2018 WL 1633027, at *6.[6]
*87 Most importantly, however, this framework releases a claimant's FLSA claims without consent and creates the possibility that, should a claimant decline to join the FLSA settlement by failing to cash the check, he or she would neither have the benefit of the settlement nor the ability to bring an a FLSA action. This would give the employee effectively no alternative "but to accept the ... check," id. , a Hobson's choice that Cheeks and a true opt-in process is intended to avoid.
None of the cases offered by Plaintiff address or solve this dilemma. (See Suppl. Letter at 1-2). All but one of those cases was decided before Cheeks . The only case decided after Cheeks, Gonqueh v. Leros Point to Point, Inc. , did allow potential claimants to join the FLSA collective by cashing their settlement checks after a final fairness hearing, (see No. 14-CV-5883, Settlement Agreement, attached as Ex. A to Decl. of Brian S. Schaffer, Dkt. No. 55, ¶ 3.6); however, the court there specifically provided that class members who did not endorse their settlement checks would not release defendants of the FLSA claims. Gonqueh v. Leros Point to Point, Inc , No. 14-CV-5883, 2016 WL 791295, at *5 (S.D.N.Y. Feb. 26, 2016).[7] In any event, the Court does not believe the settlement countenanced in Gonqueh is appropriate in light of the requirements of Cheeks .
The Court, therefore, cannot preliminarily approve the settlement in its current structure. See Xiao Ling Chen , 2018 WL 1633027, at *6 ("These issues with respect to the treatment of members of the Collective also preclude the Court from granting preliminary approval of the Rule 23 Class because the parties' Agreement inextricably intertwines the Class and Collective claims.... The[ ] deficiencies not only prevent approval of the Collective settlement, but also suggest that the proposed Rule 23 settlement therefore cannot be 'fair, reasonable, and adequate,' Fed. R. Civ. P. 23(e)(2), and the plaintiffs' motion must be denied without prejudice."). The parties must provide a revised settlement agreement by April 26, 2019 , along with a memorandum of law that explains the propriety of the new proposed settlement consistent with this Order.
SO ORDERED.

The motion also requests the Court to approve the proposed notice to potential class and collective members, appoint class counsel and a settlement administrator, and approve the parties' proposed schedule for final settlement approval. (See Mot. at 2).

At that point, "all Collective members [would also be] Class Members; however, not all Class Members [would be] Collective Members." (Class Notice at 4).

Under the proposed settlement, Allied would pay a gross settlement amount of $ 2,520,000, including $ 740,000 in attorney's fees, $ 70,000 in costs, a $ 20,000 service award for Douglas, and $ 52,000 in employer-side taxes, with a net settlement amount of $ 1,638,000. (Suppl. Letter at 2; see Settlement Agreement ¶¶ 4.1-4.2, 4.5).

Likewise, if such an employee opted out of the NYLL class action, he receives no compensation at all-he receives no NYLL compensation because he opted out of the class, and he cannot opt into the FLSA collective action because to do so he must first receive a check. (Feb. 4 Tr. at 9:2-5 ("The Court: "[T]here's no mechanism ... for someone to opt into the FLSA collective ... but opt out of the labor law class. [Plaintiff's Attorney]: No.") ).

This renders the agreement's provision that a claimant would only release FLSA claims by endorsing the settlement check, (see Settlement Agreement ¶ 5.2), nugatory.

The settlement agreement rejected in Xiao Ling Chen is almost identical to the settlement proffered in this case-it provided that (1) the NYLL class members who cash their checks opt into the FLSA collective and simultaneously release their claims; and (2) the settlement agreement asks the court to dismiss FLSA claims at a fairness hearing before any employees have cashed their checks and become FLSA collective members. See No. 15-CV-1347, Settlement Agreement, attached as Ex. A to Aff. in Supp., Dkt. No. 85 ¶¶ 3.7, 3.9.

In addition, several of the plaintiffs had filed written consent on the docket before the final fairness hearing. See No. 14-CV-5883, Consent to Become Party Plaintiff, Dkt. Nos. 3, 16, 20, 22, 25-27.